IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSEPH A. JOHNSON,

Petitioner,

v.

LANCE WIERSMA,

Respondent.

OPINION AND ORDER

23-cv-369-wmc

---

Representing himself, petitioner Joseph A. Johnson seeks a federal writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction for possession of child pornography despite having entered a "no contest" plea in Dunn County Circuit Court Case No. 2016CF357.[1] Specifically, Johnson claims that: (1) the circuit court erred by denying his motion to suppress evidence recovered based on a wrongfully compelled statement to his parole agent; (2) the state failed to disclose impeachment evidence before he entered his plea; and (3) his trial counsel's failure to investigate rendered his representation ineffective. In contrast, respondent argues that the petitioner has not met the exacting standard that would entitle him to federal habeas corpus relief from his state conviction. For the reasons explained below, this court agrees and must deny the petition.

---

[1] This court has jurisdiction because Dunn County is located in the Western District of Wisconsin. *See* 28 U.S.C. § 2241(d).

# FACTS[2]

## A. The Offense and Investigation

In 2004, petitioner Joseph A. Johnson was convicted of three counts of first-degree sexual assault of a child and sentenced to state prison, followed by a term of extended supervision. Already out of prison on extended supervision in 2016, Johnson's supervising parole agent, Denise Campbell, received a tip that he was violating the conditions of his supervised release by possessing multiple cell phones with internet access. That same tipster -- a purported acquaintance of Johnson's who wished to remain anonymous -- also represented that: at least two of these cell phones contained possible child pornography; and Johnson was communicating with a twelve-year-old boy.

Agent Campbell went to Johnson's residence and asked about the cell phones. Johnson initially responded that he only had one "TracFone," and denied having any other phones. After Johnson was questioned further, however, he advised Campbell that there "might be" other phones in his kitchen and bedroom. Johnson's fiancée then retrieved both phones and provided them to Campbell. His fiancée also told Campbell that she knew Johnson had yet another phone because of their joint cell phone plan. Afterward,

[2] Unless otherwise indicated, the following facts are taken primarily from the state appellate court decision rejecting petitioner's claims on the merits, *State v. Johnson*, 2022 WI App 13, 973 N.W.2d 14, 2022 WL 453582 (Feb. 15, 2022) (per curiam, unpublished), petitioner's pleadings, the state court record attached to his petition, and undisputed facts supported by the record in respondent's brief in opposition. Because petitioner is representing himself, the court construes all of his pleadings generously, holding them to "less stringent standards than formal pleadings drafted by lawyers" unless plainly contradicted by the state record. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).

Johnson's fiancée looked in his truck, found a black cell phone, and gave it to Campbell. As a result, Agent Campbell collected four phones in total, including Johnson's TracFone.

While Johnson was being held in state custody at the Dunn County Jail, Agent Campbell met with him again. During that interview, Johnson admitted that one of the confiscated phones may contain child pornography. Campbell then provided the phones to Investigator Maloree Switlick of the City of Menomonie Police Department, who applied for and obtained a search warrant to examine the phones' contents. Relevant to this petition, Investigator Switlick's search warrant application alleged:

> 3. Denise Campbell stated it was brought to her attention by a reliable source that Joseph A. Johnson had more than one cell phone in his possession. Campbell did a search of Johnson's residence and four cell phones were recovered and at least three of which have internet access capabilities. Johnson is not to be on the internet as part of his parole rules. Johnson also admitted to contacting a 12-year-old boy.
>
> 4. Johnson has served 8 years in prison from 7/30/2004 to 8/12/2012 for First Degree Sexual Assault of a Child. Johnson was charged for inappropriately touching females between the ages of 6-11. He was convicted in Clark County Court for three counts and 17 were read-in. Johnson is on Extended Supervision until 2020.
>
> 5. Campbell also stated *Johnson admitted to possibly having child pornography on his cell phone from awhile back*.

*State v. Johnson,* 2022 WI App 13, ¶ 4, 973 N.W.2d 14, 2022 WL 453582 (Feb. 15, 2022) (per curiam, unpublished) (emphasis added).

Before Police Investigator Switlick viewed any data found on Johnson's phones, she also interviewed him at the Dunn County Jail. After waiving his *Miranda* rights, Johnson told Switlick that he did not believe the black cell phone contained child pornography. However, when Switlick searched the contents of that phone, she found multiple images

of suspected child pornography. As a result, the Dunn County District Attorney's Office ultimately brought charges against Johnson on six counts of possessing child pornography.

**B. Suppression Hearing and Plea**

Johnson moved to suppress his statements to Campbell and any evidence derived from that conversation, including evidence obtained from his black cell phone. Essentially, Johnson's counsel argued that his statements were coerced because he was required by the conditions of his extended supervision to "provide a truthful and accurate description of his whereabouts and activities" or face revocation of his release. *Johnson*, 2022 WI App 13, at ¶ 6. More specifically, because the warrant used to search his phones relied in substantial part upon his coerced statement to Campbell that one of his phones possibly contained child pornography, Johnson argued that any evidence recovered from the search warrant must be suppressed.

At a suppression hearing before the Dunn County Circuit Court, Agent Campbell testified that Johnson was under strict rules of supervision as a previously convicted sex offender and was not allowed to possess an unauthorized electronic device, including a cellular phone with internet access. (Hearing Trans. (dkt. #7-1) at 6:14-7:7.) She also testified about the anonymous tip that Johnson had multiple cell phones and was contacting a twelve-year-old boy in violation of the conditions of his supervised release. (*Id*. at 7:13-20.) While she didn't know the anonymous source's name, Campbell testified that she believed the tipster was an acquaintance of Johnson's and wished to remain anonymous. (*Id*. at 7:21-8:1.) Campbell testified further that the black cell phone was provided to her by Johnson's fiancée, who retrieved it from Johnson's vehicle. (*Id*. at 10:20-

11:13.) At the same hearing, Inspector Switlick testified about the investigation she conducted before drafting the search warrant for inspection of the confiscated phones, including the black cell phone retrieved by Johnson's fiancée. (*Id.* at 22:19-25:16.)

Based on this testimony, the circuit court denied Johnson's motion to suppress, finding that Campbell properly relied upon an anonymous source and sufficient, independent information existed for the warranted search of the black cell phone found to contain child pornography was turned over by Johnson's fiancée. After his motion to suppress was denied, Johnson pleaded "no contest" to one count of possessing child pornography and received a sentence of four years' initial imprisonment, to be followed by five years of extended supervision.[3]

## C. Post-Conviction and Appellate Proceedings

Johnson filed a post-conviction motion in Dunn County Circuit Court, renewing the same arguments made in his motion to suppress his statements to Parole Agent Campbell, as well as the evidence recovered from the ensuing warranted search of his black cell phone. In a supplemental motion, Johnson argued further that he should be granted a trial because he had discovered an "event log" kept by Campbell, which allegedly showed that she had been untruthful in her testimony to the circuit court about the anonymous tipster. Specifically, while Campbell testified that she received a tip from an acquaintance of Johnson's who wished to remain anonymous, the log stated that she "received info from

[3] In Wisconsin, as elsewhere, "a no contest plea is an implied confession of guilt for the purposes of the case to support a judgment of conviction and in that respect is equivalent to a plea of guilty." *State v. Black*, 2001 WI 31, ¶ 16, 242 Wis. 2d 126, 624 N.W.2d 363 (citation and internal quotation marks omitted).

agent Sandy Frigo who was informed that Johnson had two cell phones and was in contact with a twelve-year-old boy." *Johnson*, 2022 WI App 13, at ¶ 37 (alteration omitted). Thus, Johnson argued, he was entitled to a trial because: (1) Campbell's log was newly discovered evidence; (2) his trial counsel was ineffective for not discovering the log; and (3) the district attorney failed to disclose that the log existed before Johnson entered his plea in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The circuit court held a post-conviction hearing to determine the import, if any, of the late disclosure of Agent Campbell's event log and to determine whether Johnson's trial counsel was ineffective for failing to investigate more fully the existence of *Brady* material before allowing him to plead no contest. At that hearing, Johnson's trial counsel testified that he had no knowledge of the log. No other witnesses were called to testify. The circuit court then granted Johnson's request to suppress his statements to Campbell but denied his request to suppress evidence obtained from the search warrant, which the circuit court concluded was supported by an independent source. The circuit court further denied Johnson's request for a trial, finding that: (1) Johnson's counsel was not ineffective; and (2) the log would not have changed the outcome of the case even if disclosed earlier.

Johnson challenged this ruling on appeal. The Wisconsin Court of Appeals assumed without deciding that Johnson's statements to Campbell were compelled in violation of the Fifth Amendment privilege against self-incrimination but affirmed the circuit court's decision not to suppress the evidence found on Johnson's phone. Even setting aside Johnson's compelled statements to his parole agent, however, the court of appeals found enough legally obtained evidence still justified the search. Instead of relying on the

independent source doctrine as the circuit court had, the Wisconsin Court of Appeals determined that the inevitable discovery doctrine applied. In particular, the appellate court held that law enforcement would have inevitably sought and discovered the evidence on the black cell phone

> independent of Johnson's statements — to establish the reliability of the anonymous source . . . because Johnson's fiancée independently discovered the phone in Johnson's vehicle and provided it to Campbell. Because the anonymous source was correct that Johnson possessed a cell phone with internet capabilities, a warrant-issuing judge would have been able to infer that the anonymous source was right about other facts alleged, including that Johnson possessed child pornography and was in contact with a twelve-year-old boy. *See* [*State v. Romero*, 2009 WI 32, ¶¶ 19-20, 317 Wis. 2d 12, 765 N.W.2d 756]. Moreover, the reliability of the anonymous source is further supported by Campbell's knowledge that the source was an acquaintance of Johnson.

*Johnson*, 2022 WI App 13, at ¶ 31. As for "the inevitable discovery doctrine in the context of this case," the court found "sufficient evidence through independent means to establish probable cause for a search warrant." *Id.* at ¶ 32. In particular, the court noted that Campbell was already "actively investigating the anonymous tip prior to obtaining any statements from Johnson … [b]ecause the anonymous source stated that Johnson's cell phones might contain possible pornography," making it "likely that Campbell would have still turned the [black phone] over to Switlick if Johnson had not made any statements" at all.

The Court of Appeals also held that Johnson neither met the criteria to withdraw his plea based on newly discovered evidence, nor showed that his trial counsel was ineffective. In reviewing those claims in particular, the Court of Appeals found that any

failure to investigate by counsel did not affect the outcome or result in prejudice because of proof that:

> Campbell received information from Agent Frigo that Johnson had two cell phones and that he was in contact with a twelve-year-old boy. As the State aptly observes, Campbell could have received information from both the anonymous source and Frigo, or some other reasonable explanation could have existed for the log entry. But because Johnson did not call Campbell as a witness at the [post-conviction] hearing to explain her log, he can only speculate as to whether Campbell lied at the suppression hearing.

*Johnson*, 2022 WI App 13, at ¶ 36.

Finally, the Wisconsin Court of Appeals concluded that the State did not fail to disclose the event log in violation of the state pretrial disclosure statute, Wis. Stat. § 971.23(1), or *Brady*, concluding that neither required disclosure to defendants who pleaded before trial. After noting once again that the log did not establish that Campbell lied, the appellate court explained:

> While Johnson's *Brady* arguments suffer from being undeveloped, we reject them on the merits in any event. The timing requirements under Wis. Stat. § 971.23(1) and *Brady* both relate to the scheduled trial date, not suppression hearings. *See* [*State v. Harris*, 2004 WI 64, ¶¶ 36-37, 272 Wis. 2d 80, 680 N.W.2d 737]. *Brady* requires that disclosure not come "so late as to prevent the defendant from receiving a fair trial," but it "does not require pretrial disclosure." *Harris*, 272 Wis. 2d 80, ¶¶ 36-37 (citation omitted). Section 971.23(1), on the other hand, requires that evidence be disclosed "within a reasonable time before trial." In other words, the evidence "must be disclosed within a sufficient time for its effective use." *Harris*, 272 Wis. 2d 80, ¶37. "Thus, in regard to the timing of disclosure, § 971.23 is broader than the constitutional requirements of *Brady*." *Harris*, 272 Wis. 2d 80, ¶37.[4]

---

[4] Specifically, as the Wisconsin Court of Appeals explained:

> Johnson's jury trial was scheduled to begin on March 20, 2019. Johnson, however, pled no contest on February 11, 2019 — thirty-seven days before trial. By pleading no contest rather than taking his case to trial, Johnson made any disclosure of the log unnecessary. *See* Wis. Stat. § 971.23(1) (requiring disclosure "within a reasonable time before trial"). Moreover, had

*Johnson*, 2022 WI App 13, at ¶¶ 39.

Thus, the Wisconsin Court of Appels affirmed Johnson's conviction and the circuit court's decision to deny his post-conviction motion. While Johnson filed a petition for further review by the Wisconsin Supreme Court, that court summarily denied his petition. *State v. Johnson*, 2022 WI 99, 995 N.W.2d 470, 2022 WL 17540842 (May 18, 2022).

OPINION

Petitioner now seeks federal habeas corpus relief, raising the same claims that were rejected on the merits in state court. Where a state prisoner challenges a judgment of conviction after exhausting state court remedies as required by 28 U.S.C. § 2254(b), a federal court must focus its habeas review on the decision of the last state court to rule on the merits of the petitioner's claims. *Jewell v. Boughton*, 90 F.4th 1199, 1202 (7th Cir. 2024). In this case, that is the Wisconsin Court of Appeals, which affirmed petitioner's conviction and the denial of his post-conviction motion on the merits. In reviewing that decision, the court is required by the Antiterrorism and Effective Death Penalty Act

---

> Johnson not pled, the State could have disclosed Campbell's log, even after February 11, and still provided Johnson with "sufficient time for its effective use" — *i.e.*, filing another suppression motion. *See Harris*, 272 Wis. 2d 80, ¶37. Therefore, even under the broader timing requirements of § 971.23(1), Johnson's arguments fail. Moreover, as we have already explained regarding Johnson's ineffective assistance of counsel claim, Johnson has failed to show that he suffered prejudice without Campbell's log. *See Harris*, 272 Wis. 2d 80, ¶39 (allowing the defendant to withdraw his plea only where the State's violation of § 971.23(1) was prejudicial to the defendant).

*Johnson*, 2022 WI App 13, at ¶¶ 40-41.

("AEDPA") to give substantial deference to the state court's adjudication. *Pitchford v. Cain*, 146 S. Ct. 1345, 1353 (2026) (citations omitted); *Scott v. Hepp*, 62 F.4th 343, 346 (7th Cir. 2023). In particular, when a claim has been adjudicated on the merits, AEDPA bars federal habeas relief unless (1) the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Neither is an easy standard to meet.

A state court decision is "contrary to" clearly established federal law only if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 406 (2000); *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2009). An "unreasonable application" of clearly established law only occurs "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Thus, the state court's application of federal law "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (citation and internal quotation marks omitted). Rather, a state prisoner seeking habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In other words, a state court's decision unreasonably applies Supreme Court precedent if it "blunder[s] so badly that every fair-minded jurist would disagree." *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam).

## I. Failure to Suppress Evidence

To begin, petitioner argues that his right to due process was violated when the circuit court failed to suppress evidence derived from his compelled statements. (Dkt. #1, at 4.) Although the petition does not elaborate, petitioner appears to be arguing that the evidence seized under the search warrant should have been suppressed because it was issued in part based on a statement that he was compelled to give Agent Campbell in violation of the Fifth Amendment to the U.S. Constitution.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "This Clause permits a person to refuse to testify against himself at a criminal trial in which he is a defendant and also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022) (citation and internal quotation marks omitted). It also "bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion." *Id.* Finally, this protection applies not only to the compelled statements themselves, but also to evidence derived from those statements. *Kastigar v. United States*, 406 U.S. 441, 460 (1972).

Nevertheless, evidence obtained by unconstitutional means is still admissible if the government can show that it would have been inevitably discovered by lawful means.

*Murray v. United States*, 487 U.S. 533, 539 (1988) ("The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered."); *Nix v. Williams*, 467 U.S. 431, 440-43 (1984) (adopting the inevitable discovery exception to the exclusionary rule). To demonstrate that this exception to the exclusionary rule applies, the government must meet the following criteria: "First, it must show that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; second, [it] must demonstrate that it would have conducted a lawful search absent the challenged conduct." *United States v. Walker*, 143 F.4th 889, 902 (7th Cir. 2025) (citations and internal quotation marks omitted).

As the Wisconsin Court of Appeals correctly observed, "[t]he Fifth Amendment to the United States Constitution prohibits the State from using compelled testimony of a person on criminal supervision, and any evidence directly or indirectly derived from such testimony, in a subsequent criminal investigation." *Johnson*, 2022 WI App 13, at ¶ 16. In support, the court also cited *State v. Quigley*, 2016 WI App 53, ¶ 46, 370 Wis. 2d 702, 883 N.W.2d 139, which relies heavily on *Kastigar*, 406 U.S. at 460. While the Wisconsin Court of Appeals ultimately assumed without deciding that Johnson's statements to Campbell were "compelled in violation of his Fifth Amendment privilege against self-incrimination," it separately found that the State had met its burden of showing that issuance of the warrant was independently justified and further found "by a preponderance

of the evidence, that it inevitably would have discovered the child pornography on Johnson's phone" by lawful means. *Johnson*, 2022 WI App 13, at ¶ 33.

The Wisconsin Court of Appeals' conclusion that the inevitable discovery doctrine applied here is consistent with U.S. Supreme Court precedent. *Compare Johnson*, 2022 WI App 13, at ¶ 25 ("evidence obtained during a search which is tainted by some illegal act may be admissible if the tainted evidence would have been inevitably discovered" if the State proves "by a preponderance of evidence" that it "inevitably would have discovered the evidence"), *with Nix*, 467 U.S. at 444 ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the [exclusionary rule's] deterrence rationale has so little basis that the evidence should be received."). Petitioner makes no argument that the State court of appeals' decision is contrary to or an unreasonable application of clearly established precedent from the U.S. Supreme Court. To the contrary, the state court's ultimate conclusion comports with relevant Supreme Court case law. Accordingly, petitioner is not entitled to habeas relief on this claim.

## II. Failure to Disclose Impeachment Evidence

Petitioner next argues that the State withheld exculpatory impeachment evidence by not disclosing Agent Campbell's event log before he entered his plea, violating his right to due process. (Dkt. #1, at 7.) By doing so, petitioner argues further that the State "deprived" him of "facts relevant to an intelligent decision to plead[.]" (*Id.*) Petitioner

asserts further that if the State had disclosed the event log before he entered his plea, "he would have insisted upon going to trial." (*Id.*)

Under *Brady*, the State violates due process when it withholds or fails to disclose exculpatory evidence that is material to the defendant's guilt or innocence. 373 U.S. at 87. However, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

In this case, petitioner maintains that the event log implicated the truthfulness of Agent Campbell's testimony about the source of the anonymous tip that led to the recovery of his cell phone containing child pornography. Impeachment evidence -- which is evidence useful in determining a witness's credibility -- may warrant a conviction's reversal if it is material to the defense presented at trial and is withheld by the government. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). However, the U.S. Supreme Court has held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). As the Supreme Court explained, the duty to disclose impeachment evidence is not required "prior to plea bargaining" because the need for such information is "more closely related to the *fairness* of a trial than to the *voluntariness* of the plea[.]" *Id.* (emphasis in original).

Admittedly, exculpatory evidence and impeachment evidence may overlap at times, but this is not one of them. As noted by the Wisconsin Court of Appeals, Agent Campbell's

event log had only minimal, potential relevance for impeachment and did not tend to establish that Campbell lied during her testimony at the suppression hearing, much less that Johnson was innocent. Consistent with *Ruiz*, the court of appeals held further that the right to disclosure of impeachment evidence under *Brady* did not apply since the petitioner pleaded no contest and did not exercise his right to trial. *Johnson*, 2022 WI App 13, at ¶ 41. Thus, while the court of appeals did not cite *Ruiz*, neither did it contradict that precedent in holding that the petitioner was not entitled to relief. *Cf. Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of [the Supreme Court's] precedents 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (quoting *Warly v. Packer*, 537 U.S. 3, 8 (2002)). Because petitioner has failed to show that the Wisconsin Court of Appeals reached a conclusion contrary to or unreasonably applied Supreme Court precedent, he is not entitled to relief on his claim based on the undisclosed event log.[5]

## III. Ineffective Assistance of Counsel

Finally, petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel because his trial attorney failed to investigate adequately the case against him. (Dkt. #1, at 6.) To prevail on an ineffective-assistance claim, a petitioner

---

[5] Petitioner has not challenged the voluntariness of his plea, and the Wisconsin Court of Appeals separately rejected his implied request to withdraw that plea based on newly discovered evidence under state law, which provides even more protection than the floor established by the U.S. Constitution. *See California v. Ramos*, 463 U.S. 992, 1013-14 (1983) ("It is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires.").

must prove both that his counsel performed deficiently and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner must prove "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Moreover, to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the guilty plea context specifically, this requires the defendant to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, petitioner argues his counsel was ineffective because "prior to a no contest plea, trial counsel has the absolute duty to investigate the facts of the State's case and to inform the defendant of those facts[,]" and his counsel "failed to do so." (Dkt. #1, at 6.) Construing petitioner's claim generously, the court assumes that petitioner is arguing (as he did in state court) that his counsel was ineffective for failing to investigate and discover Agent Campbell's event log. *See Johnson*, 2022 WI App 13, at ¶ 35. "Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence," resulting in the defendant taking a plea, the court examines "the likelihood that [the] discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id*.

In rejecting petitioner's ineffective-assistance claim, the Wisconsin Court of Appeals concluded that he failed to show the outcome of the suppression hearing would have been

different if trial counsel had discovered the event log, because the "log was not inconsistent with Campbell's testimony." *Johnson*, 2022 WI App 13, at ¶ 37. Further, because result of the suppression hearing would not have been different, the court of appeals concluded that counsel's alleged failure to investigate did not prejudice petitioner's defense. *Id*. Petitioner does not otherwise establish a reasonable likelihood that discovery of the event log would have caused counsel to change his recommendation about entering a plea, nor that he would have gone to trial on six counts of possessing child pornography instead of pleading no contest to one count.

Accordingly, petitioner has not shown that the Wisconsin Court of Appeals' decision was contrary to or a misapplication of *Strickland*; he is not entitled to relief under the federal habeas standard of review; his petition must be denied; and this case will be dismissed.

## IV. Certificate of Appealability

Finally, Rule 11(a) of the Rules Governing Section 2254 Cases requires district courts to issue or deny a certificate of appealability when entering an order adverse to the petitioner. The petitioner must make "a substantial showing of the denial of a constitutional right" for the district court to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2). A substantial showing requires more than the petitioner having good faith in their claim or the "absence of frivolity[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The petitioner, who declined to file a brief in support and also did not file a traverse despite extensions of time, has fallen well short of making a substantial showing of a constitutional violation; nor has he demonstrated that reasonable jurists would disagree with the resolution of his claims. Accordingly, the court will not issue a certificate of appealability.

ORDER

IT IS ORDERED that:

1. The habeas corpus petition filed by Joseph A. Johnson (dkt. #1) is DENIED and this action is DISMISSED with prejudice.
2. A certificate of appealability is DENIED.
3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered on this 16th day of November, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge